THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY TAIE, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>TEN BRIDGES LLC, *et al.*,<br><br>　　　　　　　　Defendants. | CASE NO. C21-0526-JCC<br><br>ORDER |

Before the Court is Defendants' motion to dismiss Plaintiffs' putative class action complaint (Dkt. No. 14). Having thoroughly considered the parties' briefing and the relevant record, the Court determines that oral argument is unnecessary and hereby GRANTS in part and DENIES in part Defendant's motion for the reasons explained below.

## I.　BACKGROUND

Clifford Groves died intestate in 2010, leaving Plaintiffs Mary Taie, Moyra Coop, and William Groves as his only heirs. (Dkt. No. 1-2 at 5.) They inherited their father's home, which was subject to a deed of trust in favor of Bank of America. (*Id.*) In 2014, Bank of America filed a foreclosure action in state court against the estate. Bank of America named Taie as a defendant, alongside the "unknown heirs" of Clifford Groves. (*Id.*; *see also* Dkt. No. 15-1 at 2 (capitalization omitted).) After a sheriff's sale of the Groves home, surplus foreclosure proceeds of $135,224.51 remained on deposit in the state court registry. (Dkt. No. 1-2 at 6.)

Defendant Ten Bridges LLC monitored that lawsuit and, when it learned about the sale, induced Plaintiffs to execute quitclaim deeds selling Ten Bridges their rights to the surplus proceeds for $5,000 each—pennies on the dollar. (*See id.*) Though not a party to the state foreclosure lawsuit, Ten Bridges then filed a motion asking the court to disburse the funds. (Dkt. No. 1-2 at 7.) The state court denied the motion, writing:

> It appears that on or about April 10, 2018, Ten Bridges LLC "purchased" each heir's interest in the [surplus] proceeds for $5,000, paying a total of $15,000 for the rights to proceeds worth $135,224.51. . . . It is not clear from the record whether the heirs were aware of the value of the proceeds or what the process would be for having the proceeds released to them, nor were the heirs provided notice of the motion to disburse.

(Dkt. No. 15-1 at 66.) The state court ordered Ten Bridges to renote its motion and provide notice to Plaintiffs. (*Id.*) Ten Bridges filed a second motion to release the funds, served Plaintiffs by mail, and the state court granted the motion. (Dkt. No. 15-1 at 104–05, 109–10.)

Plaintiffs filed this case as a putative class against Ten Bridges, its principal, Demian Heald, and his marital community. (Dkt. No. 1-2 at 2.) They assert (1) a *per se* claim under the Washington Consumer Protection Act ("CPA"), (2) a claim for injunctive relief, (3) what is essentially a claim for declaratory judgment that the quitclaim deed is unconscionable, and (4) a claim for unjust enrichment. (Dkt. No. 1-2 at 8–12.)

## II.   DISCUSSION

**A.   Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court draws reasonable inferences for the nonmoving party; but offering "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Along with the complaint, the Court may consider documents mentioned in the complaint

that are central to the claims and of undisputed authenticity, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006), and matters of judicial notice, such as public records and court documents, *see Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); Fed. R. Evid. 201.

**B.    Preclusion**

Defendants argue that, under *res judicata* principles, the state court's order disbursing the surplus funds to Ten Bridges precludes Plaintiffs' claims. (Dkt. No. 14 at 14–21.) Federal courts follow state law in applying *res judicata*. *See Dias v. Elique,* 436 F.3d 1125, 1128 (9th Cir. 2006). Defendants' motion relies on claim preclusion, which bars relitigating "claims and issues that were litigated *or could have been litigated* in a prior action." *Eugster v. Wash. State Bar Ass'n*, 397 P.3d 131, 145 (Wash. Ct. App. 2017) (emphasis added). Claim preclusion applies if the first and second lawsuit share the same (1) subject matter, (2) claims, (3) parties, and (4) "the quality of persons for or against whom the claim is made." *Id.* at 145–46. In addition, "[t]he threshold requirement of [claim preclusion] is a valid and final judgment on the merits in a prior suit." *In re Marriage of Weiser*, 475 P.3d 237, 246 (Wash. Ct. App. 2020).

Claim preclusion does not apply here. The first problem is the foreclosure judgment in favor of Bank of America. (Dkt. No. 15-1 at 112.) While *in rem* judgments do confer rights that are "conclusive against all the world," *In re Haukeli's Estate*, 171 P.2d 199, 201 (Wash. 1946), those rights belong to Bank of America—the judgment creditor—not Ten Bridges, which received the funds *after* judgment was entered and is not a beneficiary of that judgment. (Dkt. No. 15-1 at 35, 112.) Plaintiffs may well have been able to challenge Ten Bridges' right to the funds after judgment was entered, but they would have done so without being able to assert causes of action, conduct discovery, test their claims at trial, or do anything else that "a full and fair opportunity to litigate the issue or claim" normally entails. *Bank of N.Y. Mellon v. Tashiro-Townley*, 2015 WL 890830, slip op. at 3 (Wash. Ct. App. 2015) (unpublished); *see also Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 956 P.2d 312, 315 (Wash. 1998).

That foreclosure case also had different parties than this case does. Plaintiffs were parties

in that case—Taie received personal service and her siblings were validly served by publication as "unknown heirs." (Dkt. Nos. 15-1 at 49, 18 at 8); Wash. Rev. Code § 4.28.160 ("[T]he action shall proceed against such unknown heirs [served by publication] . . . in the same manner as against defendants, who are named . . . ."). Defendants, however, ignore that *they* were not parties to the foreclosure suit. Ten Bridges did file a motion, but nothing indicates that it ever formally intervened, attained party status, or won a judgment in the state case.

Defendants cite several cases involving *in rem*, foreclosure, or probate proceedings. (Dkt. No. 14 at 16–21.) But those cases either did not involve claim preclusion at all, or the party asserting preclusion was a litigant (or the direct successor or representative of one) in a prior proceeding. None of those labels describe Defendants, so preclusion does not apply.[1] *See Ten Bridges, LLC v. Midas Mulligan, LLC*, 2021 WL 4592385, slip op. at 4 (W.D. Wash. 2021) (explaining that because "neither Madrona nor Ten Bridges was a party" to a prior foreclosure action, and their involvement "began only after Ms. Asano's condominium was sold at public auction following entry of judgment," claim preclusion did not bar CPA claims against Ten Bridges, since there was no opportunity to raise CPA claims in the foreclosure action).

C.  **Washington Consumer Protection Act ("CPA") Claims**

To state a CPA, claim a plaintiff must establish (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) impacting the public interest, (4) an injury to the plaintiff's business or property, and (5) legal causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). A *per se* CPA claim allows a plaintiff to satisfy the first three of these elements by showing that the defendant violated "a statute that contains a specific legislative declaration of public interest impact." Wash. Rev. Code § 19.86.093(2).

---

[1] Because Ten Bridges was asserting a right that it purportedly bought from Plaintiffs, it arguably stood in their shoes when presenting its motion in state court. But that does not put Plaintiffs "in privity" with Ten Bridges for preclusion purposes because privity exists between a nonparty and a party only "if the party adequately represented the nonparty's interests in the prior proceeding." *Stevens Cnty. v. Futurewise*, 192 P.3d 1, 6 (Wash. Ct. App. 2008). Ten Bridges' interests clearly diverged from Plaintiffs'.

Plaintiffs assert a *per se* CPA claim based on Defendants' alleged violation of Wash. Rev. Code § 63.29.350(1). That statute makes it a crime:

> for any person to seek or receive from any person[,] or contract with any person for[,] any fee or compensation for locating or purporting to locate any . . . funds held by a county that are proceeds from a foreclosure for delinquent property taxes, assessments, or other liens, . . . in excess of five percent of the value thereof returned to such owner.

Said differently, a person earning compensation to locate enumerated funds must limit its fee to 5% and remit at least 95% of the funds to the owner. The statute expressly states that a violation is "an unfair or deceptive act in trade or commerce" under the CPA. *Id.* .350(2).

Plaintiffs assert that, because Ten Bridges kept 88.9% and paid them only 11.1% of the total funds,[2] Ten Bridges violated Wash. Rev. C. § 63.29.350(1). Defendants say this theory "is based entirely on a misconstruction" of the statute, but they admit that the Washington Court of Appeals disagrees with them. (Dkt. No. 14 at 24 (citing *Ten Bridges LLC v. Guandai*, 474 P.3d 1060 (2020), *review denied*, 487 P.3d 515, 517 (Wash. 2021)).)

In *Guandai*, Ten Bridges induced the owners of two foreclosed condominiums, Asano and Guandai, to quitclaim their interests in the properties to Ten Bridges; Asano sold her right to $346,902.95 in foreclosure proceeds for $172,000, and Guandai sold her right to $90,000 in proceeds for $15,000. *Id.* at 1064–65. When Ten Bridges tried to redeem the Asano property and claim the excess Guandai funds, the trial court denied its request on the grounds that the transactions violated Wash. Rev. C. § 63.29.350. *Id.* at 1065.

On appeal, Ten Bridges raised the same arguments for why the statute doesn't apply as it now presents in its motion to dismiss. *Compare* Dkt. No. 14 at 25–27, *with Guandai*, 474 P.3d at 1067–69. The Court of Appeals rejected these arguments, holding that Ten Bridges' transactions were void for violating Wash. Rev. Code § 63.29.350(1), because Ten Bridges charged fees of nearly 50% and 83% to Asano and Guandai respectively. 474 P.3d at 1067–70. Even though "a

---

[2] $135,224.51 in total proceeds, minus $15,000 paid to Plaintiffs equals $120,0224.51. Dividing that result by the $135,224.51 total equals 0.889 or 88.9%.

for seeking to recover the funds that Ten Bridges retains. *See Edwards v. City of Renton*, 409 P.2d 153, 157 (Wash. 1965) ("[A]ny recovery allowed plaintiffs cannot rest on the void and unenforceable contract; it must rest . . . upon a theory of quasi-contract or unjust enrichment.").

E.     **Substantive Unconscionability**

Defendants are correct that there is no such thing as an affirmative cause of action for "substantive unconscionability," (Dkt. No. 14 at 28), but Plaintiffs, too, are right that this claim is best understood as seeking declaratory judgment that the quitclaim deeds to Ten Bridges are substantively unconscionable, (Dkt. No. 17 at 24). Like unjust enrichment, their unconscionability "claim" is simply an alternative theory for invalidating the deal with Ten Bridges and recovering the funds at issue.

A contractual term is substantively unconscionable if it is so one-sided that enforcement would be "monstrously harsh," calloused, or shocking. *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013).

In *Nelson v. McGoldrick*, 896 P.2d 1258, 1260 (Wash. 1995), a widow contracted for Nelson's heir-hunting service to secure an inheritance of stock in exchange for giving Nelson 50%. Nelson contacted the stock issuer but went no further; instead, the widow's stepson picked things up from there and obtained the shares for her. *Id.* So she never paid Nelson, and when he sued her, she asserted unconscionability as a defense to enforcing their agreement. *Id.* The Washington Supreme Court held that, although the widow presented evidence that "raises the possibility that this heir hunter agreement is unconscionable," the record was insufficiently developed as to the surrounding factual circumstances—including the allocation of risk, effort, and uncertainty between the contracting parties—for the court to decide unconscionability as a matter of law. *See id.* at 1263–64.

The deal Plaintiffs entered certainly looks like a bad (and indeed an unlawful) one. But similar to *Nelson*, their complaint does not allege sufficient facts for the Court to hold as a matter of law that the quitclaim deed is substantively unconscionable. Their unconscionability "claim,"

ORDER
C21-0526-JCC
PAGE - 7

which the Court construes as one for declaratory judgment, will thus be DISMISSED.

F. **Personal Liability of Heald and his Marital Community**

Defendants assert that Plaintiffs cannot establish personal liability against Heald or his marital community because Heald acted as Ten Bridges' agent, and Plaintiffs allege nothing to justify piercing the corporate veil or imposing alter ego liability. (Dkt. No. 14 at 22.) Plaintiffs say they are not trying to disregard Ten Bridges' corporate separateness but rather impose liability for Heald's direct participation in Ten Bridges' wrongful conduct. (Dkt. No. 17 at 19.)

Plaintiffs are mostly correct on the law: Corporate officers can indeed be liable under the CPA for their own violations even where veil-piercing or alter ego cannot be established. *Grayson v. Nordic Constr. Co.*, 599 P.2d 1271 (1979); *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 553 P.2d 423 (1976); *Johnson v. Harrigan-Peach Land Dev. Co.*, 489 P.2d 923 (1971). Where they are wrong is in assuming that this means an officer is liable for a corporation's torts. The opposite is true: Corporate officers are liable for their *own* wrongful acts even if done *on behalf* of the entity they serve as an agent. *Dodson v. Econ. Equip. Co.*, 62 P.2d 708, 709 (Wash. 1936) ("Where the officer performs . . . acts which would amount to conversion if he acted for himself alone, he is personally liable even though the acts were performed for the benefit of his principal . . . ."). This rule applies where corporate officers "either knowingly committed wrongful acts or directed others to do so knowing the wrongful nature of the requested acts." *Annechino v. Worthy*, 290 P.3d 126, 130 (Wash. Ct. App. 2012) (citing the *Grayson*, *Ralph Williams'*, *Johnson*, and *Dodson* cases cited above).

Plaintiffs' allegations do not establish this. They allege that Heald "personally directed, participated, and approved Ten Bridges' conduct" when it communicated with them to secure an assignment of their rights to the surplus funds (Dkt. No. 1-2 at 9), but this conclusory assertion does not plausibly allege what Heald did that was independently wrongful while working on Ten Bridges' behalf. Plaintiffs point out that Heald personally signed a verification of Ten Bridges' first motion asking the state court to disburse the proceeds. (Dkt. No. 17 at 21 (citing Dkt. No.

15-1 at 63–64).) But even assuming, without deciding, that verifying an LLC's motion to enforce an illegal contract may be grounds for personal liability, that cannot not be the case here, because the state court *denied* the motion that Heald signed. Matt Cox, not Heald, verified the motion-to-disburse that the state court ultimately granted. (Dkt. No. 15-1 at 66, 78–79.)

Plaintiffs' theory of liability against Heald's marital community is similarly insufficient. A marital community is not liable for the separate torts of a spouse "unless the act constituting the wrong either (1) results or is intended to result in a benefit to the community or (2) is committed in the prosecution of the business of the community. *Clayton v. Wilson*, 227 P.3d 278, 280–81 (Wash. 2010) (italics omitted). Plaintiffs' allegations that this was true of Heald's conduct (Dkt. No. 1-2 at 4–5) are wholly conclusory. The personal liability claims will be DISMISSED.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 14) is GRANTED in part and DENIED in part, as follows:

1. Plaintiffs' unconscionability claim is DISMISSED without prejudice.
2. Plaintiffs' claims asserting personal liability against Demian Heald and his marital community are DISMISSED without prejudice.

It is further ORDERED that, within 30 days, Plaintiffs must file an amended complaint addressing the problems identified above. Failure to do so will result in dismissal with prejudice of the claims for which leave to amend has been granted.

DATED this 20th day of October 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE