THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY TAIE, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>TEN BRIDGES LLC, *et al.*,<br><br>  Defendants. | CASE NO. C21-0526-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiffs' motion for leave to file an amended complaint (Dkt. No. 30). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion for the reasons explained below and *sua sponte* DISMISSES with prejudice Plaintiffs' claims against the Heald marital community.

I.   **BACKGROUND**

Plaintiffs filed this putative class action against Defendants Ten Bridges LLC, Demean Heald (Ten Bridges' sole member), and his marital community, asserting *per se* violations of Washington's Consumer Protection Act ("CPA") and challenging the validity of an instrument quitclaiming to Ten Bridges their rights in a foreclosed property. (*See* Dkt. No. 1-2.) Plaintiffs allege that Ten Bridges operates by finding surplus foreclosure proceeds on deposit in court registries, wildly underpaying the property owners (or their heirs) to acquire their rights to the proceeds, and then claiming the proceeds for a massive profit. (*See* Dkt. No. 27 at 2, 8, 14–16.)

The Court dismissed without prejudice Plaintiffs' claims against Heald and his marital community. (*See generally* Dkt. No. 25.) Plaintiffs filed an amended complaint, and Ten Bridges again moved to dismiss those claims. (Dkt. Nos. 27, 28.) Rather than respond to that motion, Plaintiffs moved for leave to file a second amended complaint ("SAC"). (Dkt. No. 30.) The Court stayed the motion to dismiss pending resolution of the motion to amend. (Dkt. No. 31.)

The proposed SAC alleges that, after a state court ruled that Ten Bridges' chief business practice was unlawful, Heald and Ten Bridges entered a transaction in which Heald replaced Ten Bridges' assets with a debt owed to Heald. (Dkt. No. 30-1 at 13–15.) The proposed SAC asks the Court to unwind this transaction under Washington's Uniform Voidable Transfer Act, Chapter 19.40, RCW ("UVTA") and to hold Heald liable for Ten Bridges' acts under an alter ego theory. (*See* Dkt. No. 30-1 at 18–21.)

## II.   DISCUSSION

### A.   Legal Standard

"The court should freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant leave, the Court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies . . . , undue prejudice to the opposing party[,] and futility of the proposed amendment." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814–15 (9th Cir. 2020). "[B]ut leave to amend should be denied as futile 'only if no set of facts can be proved under the [proposed] amendment . . . that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada Cnty.*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

### B.   Analysis

Defendants do not contend there was undue delay, bad faith, or prejudice—only that Plaintiffs have repeatedly failed to cure certain pleading deficiencies and that amendment is futile. (*See generally* Dkt. No. 35.)

1.  UVTA Claim

Defendants argue that Plaintiffs' UTVA claim is futile under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud actions. (Dkt. No. 35 at 10.) The Court disagrees.

The proposed amendment cites a December 2021 state trial court filing in which Heald states that he extended a $1.2 million line of credit to Ten Bridges in June 2019 to fund its operations and received a promissory note in exchange. (*See* Dkt. No. 30-1 at 31–63.) He perfected his security interest in the spring of 2021 via a security agreement and UCC financing statement. (*See Id.*.) Heald also loaned Ten Bridges $476,356.41 in late June and early July 2019. (*Id.* at 32). Heald signed these documents both for himself and for Ten Bridges. (*See id.* at 36, 50, 60.)

So this insider transaction, in some sense, tied Healds' and Ten Bridges' fortunes together, but it can be interpreted in at least two ways. Was something nefarious happening, or was Ten Bridges just strapped for operating funds? In support of the former view, Plaintiffs supply a missing link: They allege on information and belief that, the day after the unfavorable state court ruling, and right before establishing the line of credit, "Demian Heald distributed Ten Bridges' operating capital to himself and . . . replaced Ten Bridges' operating capital with an unsecured $1.2 [m]illion Line of Credit Promissory Note he signed for Ten Bridges in favor of himself." (*Id.* at 13.)

Because Plaintiffs' proposed UVTA claim alleges actual intent to hinder, delay, or defraud, (*see id.* at 18), it must comply with Rule 9(b), *see, e.g.*, *Mosier v. Ctr. Street Lending LLC*, 2016 WL 3574627, slip op. at 4 (C.D. Cal. 2016). Defendants, however, overstate what Rule 9(b) requires. (Dkt. No. 35 at 11.) "Allegations of fraud based on information and belief may suffice as to matters peculiarly within the opposing party's knowledge, so long as the allegations are accompanied by a statement of the facts upon which the belief is founded." *Pury v. Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017) (citing *Wool v. Tandem Computers, Inc.*, 818

F.2d 1433, 1439 (9th Cir. 1987), *overruled on other grounds as stated in Flood v. Miller*, 35 F. App'x. 701, 703 n.3 (9th Cir. 2002)).

Plaintiffs' theory appears to be that, once the state court ruled it was unlawful for Ten Bridges to buy the rights to foreclosure proceeds the way it did, Heald realized that many of Ten Bridges' previous deals represented potential legal claims against it, so he reorganized Ten Bridges' capital structure to let it operate on borrowed funds while putting his claim in front of other potential creditors who did not yet have judgments. (*See* Dkt. No. 36 at 4–8.) Plaintiffs identify the facts supporting these inferences: The line-of-credit transaction happened the day after the state trial court ruling; Heald perfected his security interest after another adverse court ruling; Ten Bridges appears to be insolvent; and Heald is now contending that he has priority over other potential creditors. (Dkt. No. 30-1 at 13–15.)

For the reasons Plaintiffs explain, this is enough to satisfy Rule 9(b). It is unrealistic to expect them to know what they do not, and their theory is plausible based on what they do. Thus, it does not appear that "no set of facts can be proved under the [proposed] amendment . . . that would constitute a valid and sufficient claim or defense," *Barahona*, 881 F.3d at 1134 (citation omitted), and the Court GRANTS leave to amend to assert the UVTA claim.

### 2.  Alter Ego Liability

Although Plaintiffs' allegations supporting their alter ego theory are somewhat formulaic (Dkt. No. 30-1 at 20–21), their allegations regarding the transaction discussed above indeed suggest that Heald failed to adequately observe the corporate formalities needed to justify treating Ten Bridges as a separate entity in the context of the line-of-credit transaction (but not necessarily for all purposes). As Defendants point out, an alter ego theory is not a standalone cause of action but rather a means of imposing liability when the separateness of a business entity could be used as a shield for wrongdoing. (*See* Dkt. No. 35 at 9–10.) But Plaintiffs' allegations support this theory with respect to the line-of-credit transaction—in effect, an alternative means of recovery alongside their UVTA claim. (*See* Dkt. No. 36 at 7 (alleging that

Heald "operate[d] Ten Bridges in a perpetual state of insolvency, thereby avoiding Ten Bridges' liability to Plaintiffs and other victims").) Accordingly, leave to amend will be GRANTED with respect to Plaintiffs' alter ego theory.

### 3. Claims Against the Heald Marital Community.

Plaintiffs are correct that their motion implicates only whether they should be able to assert the alter ego and UVTA claims. (Dkt. No. 36 at 2.) But there appears to be zero difference between Plaintiffs' first amended complaint and the proposed SAC as to allegations about Heald's marital community, (*see* Dkt. No. 30-1 at 7), and these allegations are just as conclusory as they were originally, (*see* Dkt. No. 25 at 9 (dismissing them)). "A trial court may dismiss a claim sua sponte" under Rule 12(b)(6) "[w]ithout notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). Plaintiffs' failure to address the deficiencies in the marital community allegations over three iterations of pleading suggest there is no basis to assign it liability. Thus, the Court *sua sponte* DISMISSES with prejudice Plaintiffs' claims against the Heald marital community.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend (Dkt. No. 30) is GRANTED. It is further ORDERED as follows:

1. Plaintiffs' claims against the Heald marital community are DISMISSED with prejudice. Within seven days, Plaintiffs will file a revised version of the proposed SAC that deletes any reference to the Heald marital community.

2. Within 14 days of this order, Defendants will file a notice indicating either: (a) that they are standing on their current motion to dismiss (Dkt. No. 28); or (b) that they are withdrawing the motion. If Defendants withdraw the motion, they must indicate whether they will refile it and, if so, propose an aggressive deadline for doing so. The Court would plan to have any such motion briefed on an accelerated basis so this case can proceed expeditiously.

3. In the meantime, briefing on that motion (Dkt. No. 28) will remain STAYED.

DATED this 11th day of February 2022.

_John C. Coughenour_
John C. Coughenour
UNITED STATES DISTRICT JUDGE