THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY TAIE, *et al.*, <br><br>    Plaintiffs, <br>  v. <br><br>TEN BRIDGES LLC, *et al.*, <br><br>    Defendants. | CASE NO. C21-0526-JCC <br><br> ORDER |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. Nos. 67, 96) and Plaintiffs' cross-motion for partial summary judgment (Dkt. No. 94).[1] Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary[2] and hereby GRANTS in part and DENIES in part each motion for the reasons explained herein.

I.  **BACKGROUND**

According to the complaint, Clifford Groves died intestate in 2010, leaving Mary Taie, Moyra Coop, and William Groves (collectively "Plaintiffs") as his only heirs. (Dkt. No. 156.) They inherited their father's home, subject to a deed of trust. (*Id.*) In 2014, a

---

[1] Defendants first moved for partial summary judgment on contract-related issues (Dkt. No. 67), and later did so on other issues (Dkt. Nos. 73, 96), following Plaintiff's cross-motions for partial summary judgment (Dkt. Nos. 69, 94.) The Court reviews all of these motions here.

[2] The Court does not find oral argument necessary, despite Plaintiffs request, because none of the parties in the instant case will be prejudiced in light of the substantial briefing filed and the absence of a close issue raised. *See Jasinski v. Showboat Operating Co.*, 644 F.2d 1277, 1281 (9th Cir. 1981) ("The district court's struggle with a close and critical question, evident on the face of the court's opinion, is enough to establish prejudice to the losing party.")

foreclosure action was filed in state court against the estate based on this deed of trust. Ms. Taie was named a defendant in the foreclosure action, alongside the "unknown heirs" of Clifford Groves. (Dkt. No. 15-1 at 2) (capitalization omitted).) After a sheriff's sale of the Groves home, the surplus foreclosure proceeds of $135,224.51 remained, and were held on deposit in the state court registry. (Dkt. No. 1-2 at 6.)

Defendant Ten Bridges LLC monitored the foreclosure action and, when it learned about the sale, reached out to Plaintiffs and contracted with them to execute quitclaim deeds, selling their rights to the foreclosure surplus proceeds to Ten Bridges for $5,000 each. (*See id.*) Though not a party to the state foreclosure lawsuit, Ten Bridges then moved the King County Superior Court to disburse the funds. (Dkt. No. 1-2 at 7.) That court denied the motion, writing:

> It appears that on or about April 10, 2018, Ten Bridges LLC "purchased" each heir's interest in the [surplus] proceeds for $5,000, paying a total of $15,000 for the rights to proceeds worth $135,224.51. . . . It is not clear from the record whether the heirs were aware of the value of the proceeds or what the process would be for having the proceeds released to them, nor were the heirs provided notice of the motion to disburse.

(Dkt. No. 15-1 at 66.) The state court then ordered Ten Bridges to renote its motion and provide notice to Plaintiffs. (*Id.*) Ten Bridges filed a second motion to release the funds and served Plaintiffs by mail. (Dkt. No. 15-1 at 104–05, 109–10.) The state court then granted Ten Bridges' request.

Plaintiffs later filed this suit as a putative class action against Ten Bridges and its principal, Demian Heald, asserting claims under Washington's Consumer Protection Act ("CPA") and Uniform Voidable Transactions Act, along with non-statutory claims, namely, conversion, unjust enrichment, negligent misrepresentation, and abuse of the corporate form. (*See generally* Dkt. No. 1-2 at 2.) Now before the Court are various summary judgment motions. Defendant Ten Bridges seeks summary judgment on all claims, arguing there are no genuine issues of fact. (*See generally* Dkt. Nos. 67, 96.) Plaintiffs move for partial summary judgment on some of their claims. (*See generally* Dkt. Nos. 94.)

## II.   DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts in the light most favorable to the nonmoving party and draw justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. The Washington Legislature's Repeal of RCW 63.29.350

In its motion for summary judgment, Defendants challenge Plaintiffs' (1) *per se* CPA and (2) conversion claims, arguing that the Washington legislature's repeal of RCW 63.29.350 extinguished all causes of action arising under the now-repealed statute, including Plaintiffs' two claims here. (*See* Dkt. No. 67.) Absent a savings clause, "[a] repealing act terminates all rights dependent upon the repealed statute and all proceedings based on it." *Seattle Rendering Works, Inc. v. Darling–Delaware Co.*, 701 P.2d 502, 505 (Wash. 1985); *see also Hansen v. West Coast Wholesale Drug Co.*, 289 P.2d 718, 719 (Wash. 1955) (repeal of statute on which plaintiff based his cause of action during pendency of wrongful death action divested plaintiff of right of action where action existed only by virtue of repealed statute.) And it is undisputed that RCW 63.29.350 was repealed without a savings clause during the pendency of this action.[3] Defendants now seek summary judgment on Plaintiffs' *per se* CPA and conversion claims based on this repeal. (*See generally* Dkt. Nos. 67, 96.)

---

[3] In the spring of 2022, the Washington Legislature repealed, effective January 1, 2023, the previously existing chapter 63.29 of the Revised Code of Washington, including the provision at issue: RCW 63.29.350. *See* Washington laws of 2022, ch. 225, § 1505(42). SB 5531, 2021 Leg. (Wa. 2021).

1.  *Per se* CPA Violation

A plaintiff may satisfy the first three elements of a standard CPA claim by showing that the defendant violated "a statute that contains a specific legislative declaration of public interest impact." RCW 19.86.093(2). In the instant case, Plaintiffs predicated their *per se* CPA claim on Defendants' violation of the now-repealed RCW 63.29.350. Given that RCW 63.29.350 has since been repealed, the only basis left upon which Plaintiffs can assert a CPA claim is by alleging a non-*per se* violation.

To assert a non-*per se* CPA violation, Plaintiffs must establish (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) impacting the public interest, resulting in (4) an injury to the plaintiff's business or property, and (5) legal causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). In its motion for summary judgment, Defendants challenge the sufficiency of Plaintiffs' evidence with respect to the first and last elements of their CPA claim, namely, an unfair or deceptive practice and legal causation. (*See* Dkt. No. 96.) The Court will therefore limit its analysis to these elements of Plaintiffs' *prima facie* case.

i.  *Unfair or Deceptive Practice*

A plaintiff may employ one of three approaches to establish an "unfair or deceptive act or practice." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179 (Wash. 2013). The plaintiff must show either "a per se violation of a statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Id*. A plaintiff does not need to show the act was intended to deceive, "only that it had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 894 (Wash. 2009).

Here, Plaintiffs fail to offer evidence establishing that Defendants engaged in unfair or deceptive practices that had the capacity to deceive substantial portions of the public. Instead, Plaintiffs rely on the allegations made in their complaint. (*See* Dkt. No. 56 at 9) (stating "on information and belief, in the four-year period immediately preceding the filing of this action, Ten Bridges has entered into well in excess of fifty agreements with persons in the State of

Washington. . . .") And yet, as courts within this jurisdiction have repeatedly held, legal memoranda alone are not sufficient to support a plaintiff's burden under Rule 56(c). *Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9 Cir. 1974) ("But legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.")

Given that Plaintiffs have not produced specific facts showing, or even creating an inference, that Defendants engaged in unfair practices that had the capacity to deceive substantial portions of the public, Defendants are entitled to summary judgment on this issue.

Accordingly, the Court GRANTS Defendants' summary judgment motion as to Plaintiffs' *per se* CPA claim.

2. CPA Liability Against Demian Heald

Next before the Court is Defendants motion for summary judgment with respect to Plaintiffs' CPA claim against Defendant Demian Heald. (Dkt. No. 96 at 17.) Defendants argue that dismissal is appropriate because "there is no evidence supporting their [Plaintiffs'] claims that he [Mr. Heal] was directly involved in their transaction." (*See* Dkt. No. 96 at 12.) Plaintiffs, on the other hand, urge the Court to extend CPA liability to Mr. Heald because, according to Plaintiffs, he "personally directed, participated, and approved Ten Bridges' conduct" when it communicated with Plaintiffs to secure an assignment of their rights to the surplus proceeds. (*See* Dkt. No. 56 at 13.) Resolution of this issue thus turns on whether Plaintiffs have set forth sufficient evidence to support their burden at the summary judgment stage.

To be personally liable under the CPA, a corporate officer must have "either knowingly committed wrongful acts or directed others to do so knowing the wrongful nature of the requested acts." *Annechino v. Worthy*, 290 P.3d 126, 130 (Wash. Ct. App. 2012). Here, Plaintiffs have failed to set forth specific facts showing, let alone supporting an inference, that Defendant Heald knowingly committed wrongful acts or otherwise directed others to do so. (*See generally* Dkt. No. 94.) Discovery has since concluded in this case, and it remains

unclear how Plaintiffs purport to know what they allege in their third amended complaint. (*See* Dkt. No. 56.) To support their burden at summary judgment, Plaintiffs were obligated to come forward with evidence sufficient for a reasonable jury to find Defendant Heald personally liable under the CPA. Plaintiffs have failed to do so, and in the face of Defendants' motion for summary judgment, the Court is compelled to find in Defendants favor.

Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiffs' CPA claim against Defendant Heald in his personal capacity.

### 3. Conversion

Next, the parties cross-move for summary judgment on Plaintiffs conversion claim. (Dkt. Nos. 94, 96.) Plaintiffs allege that Ten Bridges' use of quitclaim deeds to acquire surplus proceeds amounting to $135,224.51 constitutes a tortious conversion of Plaintiffs' property interest. (*See* Dkt. Nos. 56, 94.) Defendant Ten Bridges argues that the repeal of RCW 63.29.350 extinguishes Plaintiffs' conversion claim. (*See* Dkt. No. 96 at 12.) In the alternative, Ten Bridges argues that Plaintiffs' conversion claim fails because Plaintiffs cannot establish that the surplus proceeds were "wrongfully received." (*Id.*) Because the relevant facts are undisputed, resolution of this issue turns on the purely legal question of whether Ten Bridges "wrongfully received" Plaintiffs' surplus proceeds.[4]

Conversion consists of an "unjustified, willful interference without lawful justification, whereby a person entitled to it is deprived of the possession of his or her property." *Potter v. Washington State Patrol*, 196 P.3d 691, 696 (Wash. 2008). "Money may be the subject of conversion if the party charged with conversion wrongfully received the money or had an obligation, which it failed to honor, to return the specific money to the party claiming it." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1039 (9th Cir. 2010). However, there can be no conversion of money unless it was "wrongfully received" by the party

---

[4] The Court need not reach the merits of whether the repeal of RCW 63.29.350 extinguishes Plaintiffs' conversion claim, since the narrower issue of whether Ten Bridges wrongfully received the surplus proceeds is dispositive.

charged with conversion. *Davenport v. Washington Educ. Ass'n*, 197 P.3d 686, 698 (Wash. 2008).

Here, it is undisputed that Ten Bridges used quitclaim deeds to acquire Plaintiffs' rights to the surplus proceeds. (*See* Dkt. Nos. 94 at 11–12, 95 at 25–26.) Plaintiffs suggest that, because Ten Bridges used "illegal and void deeds" to gain possession of the surplus proceeds, Defendants "wrongfully received" the surplus proceeds. (*See* Dkt. No. 94 at 12.) Plaintiffs' reasoning is unpersuasive. As a threshold matter, Plaintiffs fail to consider what effect, if any, the antecedent agreement reached with Ten Bridges purporting to convey Plaintiffs' rights to the surplus proceeds has on whether Ten Bridges can be found to have "wrongfully received" the surplus proceeds. *See Junkin v. Anderson,* 150 P.2d 678, 682 (Wash. 1944) ("The plaintiff in a conversion action must prove a right to possess the property converted.") Second, and equally fatal to Plaintiffs argument, is the simple fact that Ten Bridges' purposeful and, as alleged here, wrongful intent to receive and retain the surplus proceeds is immaterial to a conversion claim. *See Paris Am. Corp. v. McCausland*, 759 P.2d 1210, 1211 (Wash. 1988) ("Wrongful intent is not an element of conversion, and good faith is not a defense.")

Here, it is uncontroverted that Plaintiffs agreed to assign to Ten Bridges their surplus proceeds, that pursuant to that agreement Plaintiffs signed the quitclaim deeds, that the deeds contained the legal description of the properties in question, and that the deeds were recorded with the King County Recorder. (*See* Dkt. No. 56.) Missing here, however, are any facts or legal authority standing for Plaintiffs proposition that Ten Bridges "wrongfully received" the surplus proceeds because they were void or contrary to public policy. Courts within this jurisdiction have repeatedly dismissed conversion claims where, as here, the non-aggrieved party received prior consent. *See, e.g.*, *Kruger v. Horton*, P.2d 417, 421 (Wash. 1986) (dismissing a conversion claim for timber, brought by seller, where purchaser took possession of seller's land pursuant to a real estate contract); *Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 203 (9th Cir. 2017) (dismissing a conversion claim brought by employee where employment contract stipulated to the wage reduction at issue); *Bunn v.*

*Walch*, 342 P.2d 211, 214 (Wash. 1959) (dismissing a conversion claim brought by second mortgagees where their "presence and cooperation in the auction was an acquiescence in the sale, *which imports consent and which bars them from any recovery for conversion . . .*") (emphasis added). For this reason, Plaintiffs have failed to set forth sufficient evidence for a reasonable jury to find that Defendant Ten Bridges "wrongfully received" Plaintiffs' surplus proceeds.

Accordingly, the Court GRANTS summary judgment to Defendants with respect to Plaintiffs' conversion claim.

### C. Enforceability of the Agreements Between Ten Bridges and Plaintiffs

Next before the Court is the issue of the enforceability—or unenforceability—of agreements between Ten Bridges and Plaintiffs, following the repeal of RCW 63.29.350. (*See generally* Dkt. Nos. 67, 69, 73.) The fundamental issue to be decided, which is a purely legal one, is (1) whether the agreements were void at their inception for being in violation of RCW 63.29.350 and, if so, (2) whether the subsequent repeal of RCW 63.29.350 rendered the agreements enforceable or whether the agreements remained unenforceable.

Predictably, the parties differ in their reasoning. Plaintiffs argue that (1) the agreements reached with Ten Bridges purporting to convey the surplus proceeds were void at their inception because Ten Bridges received surplus proceeds that far exceeded the statutory limit proscribed under RCW 63.29.350. (*See* Dkt. No. 94 at 6–7.) Plaintiffs proceed by arguing that because the agreements were "void *ab initio*," (2) the subsequent repeal of RCW 63.29.350 has no effect on the enforceability of the agreements, that is, they remain void. (*See* Dkt. Nos. 69 at 1–3, 94 at 6–7.) Defendants, by contrast, argue that (1) the agreements were not void at their inception because the statute did not provide that contracts made in violation of its provisions were, as a matter of law, void. (*See* Dkt. No. 73 at 4—6.) Defendants thus conclude that (2) the agreements are now valid and enforceable. (*See id.* at 9.) Because the relevant facts regarding the nature and timing of the parties' agreement are undisputed, resolution of these arguments turns on purely legal issues.

A contract that is either illegal or violates public policy is void and unenforceable. *Fluke Corp. v. Hartford Accident & Indem. Co.*, 7 P.3d 825, 839 (Wash. Ct. App. 2000). This is not necessarily true where the agreement is neither immoral nor criminal in nature and the statute or ordinance subjects violators merely to a penalty without more. *Sienkiewicz v. Smith*, 649 P.2d 112, 115 (Wash. 1982). In terms of remedies, if a contract is illegal or flows from an illegal act, a court will leave the parties as it finds them. *Reed v. Johnson*, 67 P. 381, 385 (Wash. 1901).

The repealed statute provided as follows:

> (1) It is unlawful for any person to seek or receive from any person or contract with any person for any fee or compensation for locating or purporting to locate any property which he or she knows has been reported or paid or delivered to the department of revenue pursuant to this chapter, or funds held by a county that are proceeds from a foreclosure for delinquent property taxes, assessments, or other liens, or, funds that are otherwise held by a county because of a person's failure to claim funds held as reimbursement for unowed taxes, fees, or other government charges, in excess of five percent of the value thereof returned to such owner. Any person violating this section is guilty of a misdemeanor and shall be fined not less than the amount of the fee or charge he or she has sought or received or contracted for, and not more than ten times such amount, or imprisoned for not more than thirty days, or both.
> (2) <u>The legislature finds that the practices covered by this section are matters vitally affecting the public interest</u> for the purpose of applying the consumer protection act, chapter 19.86 RCW. Any violation of this section is not reasonable in relation to the development and preservation of business. It is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW. <u>Remedies provided by chapter 19.86 RCW are cumulative and not exclusive</u>.

RCW 63.29.350 (repealed by Washington laws of 2022, ch. 225, § 1505(42)). Nothing in the language above, or elsewhere in the statutory scheme, *see generally* Chapter 63.29 of the Revised Code of Washington (later repealed), suggests that agreements in violation of this statute are "void *ab initio*."

For this reason, Ten Bridges proposes that its agreements with Plaintiffs are not void because the statute in question did not assume to void contracts. (Dkt. No. 73 at 5–6) (citing *Pac. Lumber & Timber Co.,* 133 P. 595, 599 ("a contract which violates a statutory regulation of business is not void unless made so by the terms of the act.")). But this statutory

construction is lacking for three reasons. First, the terse text of the statute declared it "*unlawful* for any person to seek or receive . . . any fee . . . that are proceeds from a foreclosure . . . in excess of five percent of the value thereof . . ." RCW 63.29.350(1) (emphasis added). Second, the statute was enacted to address "*matters vitally affecting the public interest*." RCW 63.29.350(2) (emphasis added). Third, the statute explicitly declared that its identified remedies are "*not exclusive*." *Id.*

In general, a contract that is either illegal or violates public policy is void and unenforceable. *Fluke Corp. v. Hartford Accident & Indem. Co.*, 7 P.3d 825, 855 (Wash. Ct. App. 2000). [5] Here, though, the Court's analysis ends with the presumptive rule that, "where the contract grows immediately out of, and is connected with, an illegal act, a Court of justice will not lend its aid to enforce it." *Armstrong v. Toler*, 24 U.S. 258, 261. *See also State v. Nw. Magnesite Co.*, 182 P.2d 643, 656 (Wash. 1947) ("The nonenforcement of illegal contracts is a matter of common public interest . . . it becomes the duty of the court to refuse to entertain the action.")

In an attempt to preserve the agreements at issue, Ten Bridges argues that "no court held until 2019—a year after Plaintiffs contracted with Ten Bridges—that the statute applied to any Ten Bridges contract." (Dkt. No. 73 at 8.) This argument is unavailing. "[G]ood faith intentions do not excuse either party from knowing the law." *Morelli v. Ehsan*, 756 P.2d 129, 132 (Wash. 1988). And the agreements here were criminal, violative of public policy, and subject to extra-statutory remedies. To hold otherwise would be to subvert the will of the legislature and the entire purpose of the statute. Accordingly, the Court FINDS that the agreements reached between Ten Bridges and Plaintiffs were, indeed, void *ab initio*.

1. <u>Import of Repeal of RCW 63.29.350</u>

The Court now turns to the question of whether the repeal of RCW 63.29.350

---

[5] This is not necessarily true where the agreement is neither immoral nor criminal in nature and the statute or ordinance subjects violators merely to a penalty without more. *Sienkiewicz v. Smith*, 649 P.2d 112, 115 (Wash. 1982). This exception developed from the rule that courts should examine a statute's purpose and apply the statutory penalty before voiding a contract for a statutory violation. *Id.* In the instant case, the statutory penalty is non-exhaustive, and the Court may thus grant extra-statutory relief in the form of judicial non-enforcement.

rendered the underlying contracts between Ten Bridges and Plaintiffs enforceable. In answering that question, the Court is required to interpret Washington law. In interpreting Washington law, the Court is bound only by decisions of Washington's highest court; but it "should nevertheless follow a published intermediate state court decision" unless the Court is "convinced" that the state's highest court would reject it. *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018). Plaintiffs' briefing cites *Ten Bridges LLC v. Guandai*, 474 P.3d 1060, 1068 (Wash. 2020), a case involving virtually identical contracts as those entered into by Plaintiffs here. (Dkt. No. 94.) Nothing suggests that the Washington Supreme Court would reject *Guandai*.

In *Guandai*, the Washington Court of Appeals affirmed a King County Superior Court decision that found agreements between Ten Bridges and owners of real property—Ms. Guandai and Ms. Asano—to be in violation of RCW 63.29.350 and therefore void. The Washington Court of Appeals reasoned that "regardless of their form, Ten Bridges' transactions with Guandai and Asano violated RCW 63.29.350 and were [therefore] void if Ten Bridges sought more than five percent of the value of the funds as compensation for locating or purporting to locate the surplus funds." *Guandai*, 474 P.3d at 1069; *see also Ten Bridges LLC v. Hofstad*, 2022 WL 2357079, slip op. at 3 (W.D. Wash. 2022) ("Based on the state court's ruling that the Asano and Guandai quitclaim deeds are not valid under RCW 63.29.350, the Court finds that the quitclaim deed here is similarly invalid.").

Applying *Guandai* to the case at bar, the Court finds that because the agreements and deeds delivered by Plaintiffs to Ten Bridges were void *ab initio*, the agreements thus remained void after the repeal of RCW 63.29.350. This conclusion is further compelled by the fact that, when the Legislature repealed RCW 63.29.350, it made no provisions to validate agreements like the ones between Ten Bridges and Plaintiffs. Ultimately, this Court's reasoning is consistent with the long-accepted principle that "a bargain that is improper and void by reason of a statute existing at the time of contracting does not become valid and enforceable when the legislature subsequently repeals the statute." 15 Corbin, CORBIN ON CONTRACTS §89.14 (2020).

1    Accordingly, the Court DENIES Defendants' motion for summary judgment and
2 GRANTS Plaintiffs' motion for summary judgment with respect to the unenforceability of
3 the contracts at issue.

4    **D.   Unjust Enrichment**

5    The parties also cross-move on Plaintiffs' unjust enrichment claim against Ten
6 Bridges for receiving and retaining Plaintiffs' surplus proceeds: Plaintiffs argue they are
7 entitled to summary judgment as a matter of law on this claim, (*see* Dkt. Nos. 94 at 12–13),
8 while Ten Bridges argues that any unjust enrichment claim should be dismissed because the
9 contracts at issue are valid—even after the repeal of RCW 63.29.350—thereby prohibiting
10 any quasi-contractual remedies. (*See* Dkt. No. 96 at 27.) Neither party has identified any facts
11 in dispute that would preclude the Court from ruling on this claim as a matter of law.

12    Unjust enrichment allows "recovery for the value of the benefit retained absent any
13 contractual relationship because notions of fairness and justice require it." *Young v. Young*,
14 191 P.3d 1258, 1262 (Wash. 2008). Three elements must be established to sustain an unjust
15 enrichment claim: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge
16 by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the
17 benefit under such circumstances that make it inequitable for the defendant to retain the
18 benefit without the payment of its value. *Id*.

19    Defendants are correct in stating that because unjust enrichment is a quasi-contractual
20 remedy it does not apply to "a valid express contract." (*See* Dkt. No. 14.) However,
21 Defendants are incorrect in presuming that the agreements at issue are valid express
22 contracts. As previously noted, under *Guandai*, the contracts at issue are not valid. *See Ten*
23 *Bridges, LLC v. Guandai*, 474 P.3d 1060, 1069 ("Ten Bridges' transactions with Guandai and
24 Asano violated RCW 63.29.350 and were [therefore] void."). It follows, therefore, that unjust
25 enrichment is a cognizable theory for recovery under the circumstances.

26    Here, it is undisputed that the first two elements of Plaintiffs' unjust enrichment claim
are satisfied. First, Plaintiffs conferred a benefit to Ten Bridges—the quit claim deeds. (*See*
Dkt. No. 70 at 27, 39.) Second, it is uncontroverted that Ten Bridges used these deeds to

obtain Plaintiffs' surplus proceeds. (*See* Dkt. No. 96 at 8.) In view of these undisputed facts, resolution of Plaintiffs' unjust enrichment claim turns on whether, under the circumstances, it would be inequitable for Ten Bridges to retain the benefit conferred without compensating Plaintiffs. *See Young*, 191 P.3d at 1262.

Based on the totality of the circumstances, the Court finds that it would be unjust for Ten Bridges to retain the surplus proceeds. At the time of its enactment, RCW 63.29.350 was instituted precisely to protect consumers from predatory practices in the real-estate foreclosure market. It is evident from the record that Ten Bridges sought more than the statutorily permitted five percent of Plaintiffs' surplus proceeds. When it succeeded in doing so, Ten Bridges received $120,224.51 more than it was otherwise permitted under RCW 63.29.350. Ultimately, then, Ten Bridges' equity-stripping scheme gives rise to circumstances where retention of the surplus proceeds would be manifestly inequitable.

Accordingly, Plaintiffs' motion for summary judgment is GRANTED with respect to their unjust enrichment claim.

E.   **Voidable Transfer**

Next before the Court is Defendants' motion for summary judgment on Plaintiffs' "voidable transfer" claim. (*See* Dkt. No. 96 at 20–22.) Defendants argue they are entitled to summary judgment because Plaintiffs fail to set forth a factual basis for alleging fraud. (*Id.*at 20.) The Court agrees. Under RCW 19.40.041(a)(1), "[a] transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . [w]ith *actual intent to . . . defraud* any creditor of the debtor." RCW 19.40.041(a)(1) (emphasis added). The issue before the Court is thus whether Plaintiffs have established sufficient facts such that a reasonable jury could find that Defendant Heald had an "actual intent to defraud." *See* RCW 19.40.041(a)(1).

Here, Plaintiffs fail to set forth specific evidence from which reasonably minded jurors might draw an inference that Defendant Heald had an actual intent to defraud. Instead, Plaintiffs cite their third amended complaint which states that "on June 1, 2019 – on information and belief, Demian Heald distributed Ten Bridges' operating capital to himself

and, in order to continue funding Ten Bridges' operations, replaced Ten Bridges' operating capital with an unsecured $1.2 million line of Credit Promissory Note he signed for Ten Bridges in favor of himself." (*See* Dkt. No. 56 at 10–11.) Plaintiffs' argument appears to be that once the King County court ruled it unlawful for Ten Bridges to buy the rights to Plaintiffs' foreclosure proceeds, Defendant Heald realized that many of Ten Bridges' agreements were subject to legal liability. Consequently, Heald reorganized Ten Bridges' capital structure to allow it to operate on borrowed funds while putting his claim to the surplus proceeds in front of other potential creditors who did not yet have court judgments. (*See* Dkt. No. 36 at 4–8.) While the allegations made in Plaintiffs complaint may, with accompanying evidence, be sufficient to create an issue of material fact about whether there was a shell game being played by Mr. Heald, without any specific evidence showing, or even creating an inference to that effect, the Court is compelled to grant summary judgment to Defendant Ten Bridges.

Accordingly, the Court GRANTS summary judgment to Ten Bridges on Plaintiffs' "voidable transfer" claim.

### F.  Alter Ego

The Court next turns to Defendants' motion for summary judgment on Plaintiffs' "alter ego" claim. (Dkt. No. 96 at 23–24.) Ten Bridges argues that Plaintiffs "have never had any evidence that . . . Ten Bridges did not respect business formalities." (Dkt. No. 96 at 23.) Plaintiffs, on the other hand, predicate their "alter ago" claim on the same set of facts as their voidable transfer claim. (*See* Dkt. No. 36 at 7) (alleging that Heald "operate[d] Ten Bridges in a perpetual state of insolvency, thereby avoiding Ten Bridges' liability to Plaintiffs and other victims.").

Washington recognizes the "alter ego" theory of corporate liability which provides: "Where a private person so dominates and controls a corporation that such corporation is his *alter ego,* a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same." *Standard Fire Ins. Co. v. Blakeslee,* 771 P.2d 1172, 1178 (Wash. Ct. App. 1989) (italics in original). To determine whether a

corporation is a private person's alter ego, Washington courts look at (1) whether the corporate form was used to violate or evade a duty, and (2) whether the corporate form must be disregarded to prevent loss to an innocent party. *Washington Water Jet Workers Ass'n v. Yarbrough*, 90 P.3d 42, 45 (Wash. 2004). For the first element to be met, the Court must find an abuse of the corporate form, which "typically involves 'fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.'" *Truckweld Equip. Co. v. Olson*, 618 P.2d 1017, 1021 (Wash. Ct. App. 1980). As for the second element, the Court must find that "wrongful corporate activities . . . actually harm[ed] the party seeking relief so that disregard is necessary." *Meisel v. M & N Mod. Hydraulic Press Co.*, 645 P.2d 689, 692 (Wash. 1982).

Here, Plaintiffs again rely on the allegations set forth in their third amended complaint to support their burden at summary judgment. There, Plaintiffs alleged that Defendant Heald disregarded the corporate form when he replaced Ten Bridges' operating capital with an unsecured $1.2 million line of credit he signed on behalf of Ten Bridges in favor of himself. (*See generally* Dkt. No. 56 at 10–11.) As the Court noted previously, Plaintiffs' legal memoranda cannot by itself create a factual dispute sufficient to defeat Defendants' motion for summary judgment. *Celotex Corp.*, 477 U.S. at 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), <u>except the mere pleadings themselves</u>.") (emphasis added). Given that there is no evidence from which reasonable jurors might draw an inference of "alter ego" liability, the Court is compelled to grant summary judgment for Defendants.

Accordingly, the Court GRANTS Defendants summary judgment on the "alter ago" claim.

**G.   Negligent Misrepresentation**

Next before the Court is Defendants' motion for summary judgment on Plaintiffs' negligent misrepresentation claim. (Dkt. No. 96 at 26–28.) A defendant is liable for negligent misrepresentation if (1) they supplied false information, (2) that they knew or should have known would be used as guidance in the plaintiff's business transactions, (3) the defendant

was negligent in obtaining or communicating the false information, (4) the plaintiff reasonably relied on the false information, and (5) the false information proximately caused damages. *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2009).

Defendants argue they are entitled to summary judgment because Plaintiffs cannot establish that "there was a negligent misrepresentation they relied on." (Dkt. No. 96 at 26–27.) The Court understands Defendants' argument as challenging the sufficiency of Plaintiffs' evidence with respect to the first and fourth elements of their negligent misrepresentation claim. Resolution of this issue thus turns on whether Plaintiffs have offered sufficient evidence from which reasonably minded jurors might draw an inference that Ten Bridges supplied false information that Plaintiffs relied upon. Here, Plaintiffs fail to offer specific evidence establishing that Defendant Ten Bridges supplied false information. (Dkt. No. 69.) While Plaintiffs' third amended complaint addresses the first element of their claim, as this Court previously noted, Plaintiffs complaint cannot, by itself, create a factual dispute sufficient to defeat summary judgment. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (noting that mere allegations of injury, without more, are insufficient to carry plaintiff's burden of proof on summary judgment).

Accordingly, the Court GRANTS Defendants' summary judgment on Plaintiffs' negligent misrepresentation claim.

### III.   CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment (Dkt. Nos. 67, 94, 96) are GRANTED in part and DENIED in part, and the Court ORDERS as follows:

1. Plaintiffs' CPA claims against Ten Bridges and Demian Heald are DISMISSED.
2. Plaintiffs' conversion claims are DISMISSED.
3. Plaintiffs' UVTA claims are DISMISSED.
4. Plaintiffs' "alter ego" liability claims are DISMISSED.
5. Plaintiffs' negligent misrepresentation claims are DISMISSED.
6. The Court FINDS that the contracts violated RCW 63.29.350 and were therefore

void at their inception. The Court further FINDS that the repeal of RCW 63.29.350 did not validate the contracts between Plaintiffs and Ten Bridges LLC.

7. Summary judgment is GRANTED as to Plaintiffs' unjust enrichment claim.

8. The Clerk is DIRECTED to maintain Docket Numbers 95, 117, and 136 under seal.

9. The parties are further INSTRUCTED to meet and confer and, within 21-days of this Order, submit a Joint Status Report with respect to whether class adjudication in this matter is appropriate.

DATED this 28th day of November 2023.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE