THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY TAIE, *et al.*, | CASE NO. C21-0526-JCC |
| Plaintiffs, | ORDER |
| v. | |
| TEN BRIDGES LLC, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion for reconsideration (Dkt. No. 145) of the Court's order granting in part and denying in part Defendants' motion for summary judgment (Dkt. No. 144). Having thoroughly considered the briefing and the relevant record, the Court DENIES Defendants' motion (Dkt. No. 145) for the reasons explained herein.

I.    **BACKGROUND**

Clifford Groves died intestate in 2010, leaving Mary Taie, Moyra Coop, and William Groves (collectively "Plaintiffs") as his only heirs. (Dkt. No. 156.) They inherited their father's home, subject to a deed of trust. (*Id.*) In 2014, a foreclosure action was filed in state court against the estate based on this deed of trust. Ms. Taie was named a defendant in the foreclosure action, alongside the "unknown heirs" of Clifford Groves. (Dkt. No. 15-1 at 2) (capitalization omitted).) After a sheriff's sale of the Groves home, the surplus foreclosure proceeds of $135,224.51 remained, and were held on deposit in the state court registry. (Dkt. No. 1-2 at 6.)

Defendant Ten Bridges LLC monitored the foreclosure action and when it learned about the sale, reached out to Plaintiffs and contracted with them to execute quitclaim deeds, selling their rights to the foreclosure surplus proceeds to Ten Bridges for $5,000 each. (*See*

*id.*) Though not a party to the state foreclosure lawsuit, Ten Bridges then moved for the King County Superior Court to disburse the funds. (Dkt. No. 1-2 at 7.) That court denied the motion, writing:

> It appears that on or about April 10, 2018, Ten Bridges LLC "purchased" each heir's interest in the [surplus] proceeds for $5,000, paying a total of $15,000 for the rights to proceeds worth $135,224.51. . . . It is not clear from the record whether the heirs were aware of the value of the proceeds or what the process would be for having the proceeds released to them, nor were the heirs provided notice of the motion to disburse.

(Dkt. No. 15-1 at 66.) The state court then ordered Ten Bridges to renote its motion and provide notice to Plaintiffs. (*Id.*) Ten Bridges filed a second motion to release the funds and served Plaintiffs by mail. (Dkt. No. 15-1 at 104–05, 109–10.) The state court then granted Ten Bridges's request.

Plaintiffs later filed this suit as a putative class action against Ten Bridges and its principal, Demian Heald, asserting claims under Washington's Consumer Protection Act ("CPA") and Uniform Voidable Transactions Act, along with non-statutory claims, namely conversion, unjust enrichment, negligent misrepresentation, and abuse of the corporate form. (*See generally* Dkt. No. 1-2 at 2.) The parties moved for summary judgment (Dkt. Nos. 67, 94, 96) which the Court granted in part and denied in part. (Dkt. No. 144.) Now before the Court is Defendants' motion for reconsideration (Dkt. No. 145) of this Court's summary judgment order (Dkt. No. 144).[1]

## II.   DISCUSSION

Motions for reconsideration are generally disfavored. LCR 7(h)(1). They are only appropriate where there is "manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." *Id.* Here, Defendants correctly state that the Court failed to address their so-called "lead" argument—namely, that Plaintiffs' claims are procedurally barred and that this Court's summary judgment order in effect overruled a final, years-old state court order. (*See* Dkt. No. 145 at 2.) Defendants argue that in so doing, this Court flouted well-

---

[1] Pursuant to LCR 7(h)(3), this Court instructed Plaintiffs to file a response (Dkt. No. 146), which it did. (*See* Dkt. No. 148.) Defendant, in turn, filed its reply. (*See* Dkt. No. 150.)

1    established principles of federalism, including the doctrine of *res judicata*. (Dkt. No. 150 at

2    2.) In addition, Defendants seek reconsideration of this Court's determination that the

3    underlying contracts between Ten Bridges and Plaintiffs were *void ab initio* and thus

4    remained void after the repeal of RCW 63.29.350. (Dkt. No. 145.) The Court addresses each

5    argument in turn.

6        **A**.   ***Void ab Initio***

7        With respect to the status of the agreements between Plaintiffs and Ten Bridges,

8    Defendants fail to demonstrate manifest error in the Court's reasoning or a showing of new

9    facts or legal authority, as required by LCR 7(h)(1). Instead, Defendants reiterate arguments

10   that were considered and rejected by this Court. (*See* Dkt. No. 144 at 8.) In its summary

11   judgment order, the Court noted that Defendants' bid to construe the relevant statute was

12   defective in at least three ways. (*Id*. at 9-10.) Having considered and rejected Defendants'

13   reasoning on this issue, the Court shall not reconsider its ruling. "A motion for

14   reconsideration should not be used to ask the court to rethink what the court had already

15   thought through—rightly or wrongly." *Wilcox v. Hamilton Construction, LLC*, 426 F. Supp.

16   3d 788, 792 (W.D. Wash. 2019). Nevertheless, the Court will consider Defendants'

17   procedural argument regarding whether Plaintiffs' action in federal court constitutes an

18   impermissible collateral attack on a prior state court ruling.

19       **B.**   ***Res Judicata***

20       *Res judicata* refers to a matter that has been conclusively adjudicated as to the rights

21   of the parties and therefore serves as a bar to any subsequent actions involving the same

22   claim or cause of action. *See Bordeaux v. Ingersoll Rand Co.*, 429 P.2d 207, 209 (Wash.

23   1967). A party seeking to apply *res judicata* in a subsequent action must establish four

24   elements as between a prior action and a subsequent challenged action: "concurrence of

25   identity . . . (1) [o]f subject-matter; (2) of cause of action; (3) of persons and parties; and

26   (4) in the quality of the persons for or against whom the claim is made." *N. Pac. Ry. Co. v.*

     *Snohomish County*, 172 P. 878, 879 (Wash. 1918); *see also Weaver v. City of Everett*, 450

     P.3d 177, 185 (Wash. 2019). However, Washington courts have held that the same subject

matter is not necessarily implicated in cases involving the same facts. *See, e.g.*, *Mellor v. Chamberlin*, 673 P.2d 610, 643 (Wash. 1983). Specifically, a "cause of action which did not exist at the time of a former judgment could not have been the subject-matter of the action sustaining that judgment." *Harsin v. Oman*, 123 P.1 281, 284 (Wash. 1912).

Here, Defendants argue that the doctrine of *res judicata* applies to bar Plaintiffs' action before this Court. And yet, the Court is presented with no evidence that the issues raised in Plaintiffs' complaint (Dkt. No. 1) were fully or fairly litigated in a prior case. In particular, Defendants grossly exaggerate the significance of a King County Superior Court ruling disbursing the at-issue surplus proceeds to Ten Bridges. (Dkt. No. 1-2 at 7.) None of Plaintiffs' causes of action were ripe at that time. *See Community Nat. Bank v. Fidelity & Deposit Co. of Maryland*, 563 F.2d 1319, 1323 (9th Cir. 1977) (finding no preclusion of an issue that "was not actually litigated"). The formal entry of a disbursement order by the state court was a mere procedural device that did not purport to adjudicate the dispute on the merits.

Defendants further suggest that preclusion is appropriate because the surplus proceeds at-issue were, as a factual matter, the basis of both actions. (Dkt. No. 150 at 2.) In *Mellor v. Chamberlin,* however, the Washington Supreme Court rejected a similar argument and held that a claim for breach of warranty was not precluded by a prior claim for misrepresentation between the same parties over the sale of the same real property. 673 P.2d 610, 643 (Wash. 1983). The court reasoned that "[a]lthough both lawsuits arose out of the same transaction . . . their subject matter differed" because at the time of the misrepresentation suit, the plaintiff-purchaser had not yet been injured due to the alleged breach of covenant. *Id.* at 673. The same is true here: though the surplus proceeds pertains to both cases, the underlying subject matter differs because at the time the state court disbursed the proceeds, Plaintiffs had not yet been injured.

Finally, it must be noted that Defendants were not parties to the foreclosure suit. Indeed, nothing in the record suggests that Ten Bridges intervened as an interested party, attained party status, or won a judgment on the merits. *See Ten Bridges, LLC v. Midas*

*Mulligan, LLC*, 2021 WL 4592385, slip op. at 4 (W.D. Wash. 2021) (explaining that because "neither Madrona nor Ten Bridges was a party" to a prior foreclosure action, and their involvement "began only after Ms. Asano's condominium was sold at public auction following entry of judgment," claim preclusion did not bar CPA claims against Ten Bridges, since there was no opportunity to raise CPA claims in the foreclosure action).

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration (Dkt. No. 145) is DENIED.

DATED this 11th day of January 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE